**SO ORDERED.**

**SIGNED this 31st day of December, 2019.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| The Benefit Corner, LLC, | ) | Case No. 16-11027 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## ORDER AND OPINION SUSTAINING OBJECTION TO CLAIM

This case came before the Court for hearing on the Trustee's Objection to Allowance of Claim No. 36 (the "Objection"). ECF No. 159. At the hearing, Everett B. Saslow, Jr. (the "Trustee") appeared, Scott Curtis ("Claimant") appeared and testified, and Jeffrey Oleynik appeared on behalf Claimant. After hearing the testimony of Claimant and the arguments of counsel, the Court took the matter under advisement. For the reasons set forth herein, the Court will sustain the Objection and disallow Claim No. 36 as untimely.

## Jurisdiction and Authority

The Court has jurisdiction over the subject matter of this proceeding under 28 U.S.C. § 1334.  Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred this case and this proceeding to this Court by its Local Rule 83.11.  This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(B).  This Court has constitutional authority to enter final judgment.  Wiswall v. Campbell, 93 U.S. 347, 350-351 (1876).

## Procedural History

Linda C. Dunlap, TBC & Associates, Inc., and Cben Enterprises, Inc. (the "Petitioning Creditors"), commenced this case on September 27, 2016, by filing an involuntary petition for relief under chapter 7 ("the Petition") against The Benefit Corner, LLC ("Debtor").  ECF No. 1.  The Clerk of Court originally issued a Notice of Chapter 7 Bankruptcy Case providing under Rule 2002(e) that no assets were available to liquidate and directing creditors not to file proofs of claims.  ECF No. 22.  The Trustee subsequently recovered assets and requested that the Clerk of Court notify creditors of the need to file proofs of claims.  ECF No. 26.  On December 27, 2016, the Clerk of Court issued a notice to creditors (the "Claims Notice"), which informed creditors that assets had been recovered and, pursuant to Rule 3002(c)(5), directed creditors to file proofs of claims by March 29, 2017.  ECF No. 27.

The Bankruptcy Noticing Center served the Claims Notice by first class mail on creditors, including Claimant, two days later. ECF No. 28. The Claims Notice correctly listed Claimant's address. Id. The Claims Notice included the following language: "Creditors who do not file a proof of claim on or before this date will not share in any distribution from the debtor's estate." Id.

Over two and a half years after the Clerk of Court mailed the Claims Notice to Claimant, Claimant filed Claim No. 36 (the "Claim") on July 26, 2019, asserting an unsecured, non-priority claim for $70,000.00. The Addendum to the Claim provides that the Claim is based on a settlement agreement described below. The Trustee objected to the Claim as untimely. ECF No. 159. Claimant filed the Claim on the day before the Trustee had prepared to send the final report to the Bankruptcy Administrator. Because Rule 9006 does not authorize an extension of the claims bar date where the motion for an extension of time is filed after the deadline, the Trustee contends that the Claim is only eligible for distribution under 11 U.S.C. §§ 726(a)(2)(c) or (a)(3).[1] The Trustee further asserts that the Court should disallow the Claim to the extent that Claimant has not actually paid any portion of the settlement. If the Court allows the Claim, Trustee requests that the Court cap the Claim at $5,000.00, the total amount paid

---

[1] There will be no distribution beyond timely filed claims in this case.

thus far by Claimant to JC Squared under the settlement agreement discussed below.

Claimant responded to the Objection,[2] ECF No. 160, and the Court scheduled a hearing. ECF No. 164. At the hearing, Claimant did not dispute that he knew about the filing of the Petition at the inception of the case, that he received notices regarding the Petition, and that the schedules and Claims Notice correctly listed his name and address. Nevertheless, Claimant testified that he did not recall receiving the Claims Notice.

Following the arguments of counsel and the testimony of Claimant at the hearing, the Court took the Objection under advisement.

### Factual Background

Claimant was one of three principals of the Debtor, a franchise insurance agency that sold Affordable Care Act ("ACA") insurance. The Debtor was a successful company until the spring of 2016, when ACA insurance carriers began withdrawing from the exchange and stopped paying commissions. On July 28, 2016, the Debtor along with its three principals, Claimant, Jay Hill, and Brandon Adams, executed a Promissory Note (the "Note") in favor of

---

[2] Claimant entered an incorrect event code on CM/ECF which mislabeled the response as "Answer to Complaint Objection to Proof of Claim Doc. No 159." Claimant later amended his response with the correct event code on September 5, 2019. ECF No. 161. There are no substantive differences between Claimant's initial response and his amended response.

JC Squared, Inc. ("JC Squared") in the amount of $170,000.00 with interest beginning August 1, 2016.[3]  Claim No. 36, pt. 2, p. 1. The Note defines the "Borrowers" to include Debtor, Claimant, Jay Hill, and Brandon Adams, and required monthly interest only payments until January 1, 2017, at which time all remaining unpaid principal and interest was due.  Id., pt. 4, p. 4.  Despite defining the principals, including Claimant, as "Borrowers," the Note states that any failure to timely pay amounts due by "the Borrower" constitutes an event of default, id., pt. 4, p. 5, and Article IX of the Note states that Claimant, Jay Hill, and Brandon Adams "unconditionally personally guarantee all of the obligations of the Borrower under this Note . . . ."  Id., pt. 4, p. 6.  The Note is signed by Claimant as one of the "Borrowers."  Id., pt. 4, p. 8.  In September 2016, after Debtor failed to make the first interest payment due under the Note, the Petitioning Creditors filed the Petition against Debtor.  Id.

On March 10, 2017, JC Squared sued Claimant and the other non-debtor co-signors of the Note individually and severally to recover $170,000 plus interest and attorney's fees due under the Note (the "Civil Suit").  Claim 36, pt. 4, p. 1.  The state court issued the summons on March 24, 2017, just a few days prior to the deadline to file proofs of claim on March 29, 2017.  At the hearing

---

[3] Claimant does not dispute that he signed the Note.

on the Objection, counsel for Claimant stated that Claimant accepted service of the state court complaint sometime in early April 2017, but counsel could not find documentation of the exact date of service. On April 21, 2017, Claimant filed an answer (the "Answer") to JC Squared's complaint in the Civil Suit, disputing his liability under the Note.[4]

On December 28, 2018, over a year and a half after being sued by JC Squared and the claims deadline, Claimant settled the Civil Suit (the "Settlement Agreement"). Claim No. 36, pt. 5. Under the Settlement Agreement, Claimant agreed to pay JC Squared $70,000 over several years, and JC Squared released all of its claims related to the Note.[5] Id. at pt. 2. Claimant made the first payment due under the Settlement Agreement in May 2019, but as of the date of the hearing on the Objection, had not made any further payments. Id. At some point thereafter, Claimant alleges that he learned that Debtor's bankruptcy case had not been closed, and filed the Claim on July 26, 2019, approximately two years and four months after the deadline to file claims had passed and two years

---

[4] See Claim No. 36, pt. 3.

[5] The Settlement Agreement contained the following language:

> 5. Release by JC Squared. Upon the execution of this Agreement, JC Squared … does hereby fully release … Curtis or any related party acting on or for or acting on or on behalf of Curtis from any and all claims, liens, demands, damages, losses, liabilities, actions, causes of actions, or suits in law or in equity of whatever kind in nature, which JC Squared … may have … arising out of or in any way related to the Promissory Note for $170,000 which has been settled for $70,000.

and three months after the extended deadline to file any claims on behalf of another creditor under Fed. R. Bankr. P. 3005.  Id.

## Discussion

Claimant's arguments are not supported by the record or the application of the Bankruptcy Rules.  JC Squared did not file a timely proof of claim in this case, and Claimant did not file his untimely claim in the name of JC Squared or on its behalf.[6] Moreover, even if the Court were to construe the Claim as one filed on behalf of JC Squared under Rule 3005, Claimant has not established that his failure to timely file the claim is the result of excusable neglect.

**1.    The Claim is untimely under Rule 3002.**

A creditor may file a proof of claim on its own behalf.  11 U.S.C. § 501(a).  Under § 502(b)(9), if a party in interest objects to a claim, the court, after notice and a hearing, should disallow the claim to the extent that "proof of such claim is not timely filed . . . ."  Rule 3002(c) establishes the general time period for a creditor to file a proof of claim in a chapter 7 case.  Where a case is initially noticed as a no asset case, Rule 3002(c)(5) provides:

> If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days'

---

[6] At the time Claimant filed the Claim, JC Squared already had released any claims against Debtor and its estate.

7

notice by mail to creditors of that fact and of the date
by which proofs of claim must be filed.

By operation of Rule 9006 on Rule 3002, after the proof of
claim deadline has expired in a chapter 7 case without being
extended by court order, the court may not extend the time period
to file a proof of claim absent certain exceptions inapplicable
here.  See Rule 9006(b)(3) and (c)(2); In re Coastal Alaska Lines,
Inc., 920 F.2d 1428, 1432-33 (9th Cir. 1990) ("[T]he bankruptcy
court cannot enlarge the time for filing a proof of claim unless
one of the six situations listed in Rule 3002(c) exists."); In re
Nwonwu, 362 B.R. 705, 707 (E.D. Va. 2007) ("The claims bar date .
. . may not be extended under the court's general power to extend
deadlines but only as specifically provided in Rule 3002(c).").
Rule 9006(b)(3) expressly limits the court's authority to extend
the period to file a claim under Rule 3002(c), even for excusable
neglect.  Rule 9006(b)(3), in relevant part, provides:

> The court may enlarge the time for taking action under
> Rule[]. . . 3002(c) . . . only to the extent and under
> the conditions stated in [that] rule[].

Rule 3002(c) does not permit the court to extend the time to file
a proof of claim for excusable neglect.  In re Greenig, 152 F.3d
631, 635 (7th Cir. 1998); In re Stewart, 247 B.R. 515, 519-520
(Bankr. M.D. Fla. 2000); In re Armstrong, 238 B.R. 438, 440 (Bankr.
E.D. Ark. 1999); In re Voccola, 234 B.R. 239, 240 (Bankr. D.R.I.
1999).  Therefore, the Court may not extend the time for Claimant

8

to file his Claim based on excusable neglect, and the Claim is untimely.

A claim is disallowed under section 502(b)(9) to the extent that:

> [P]roof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

Therefore, the Claim must be disallowed to the extent provided under § 502(b)(9).

## 2. The Claim is not saved by the potential refuge of Rule 3005.

Claimant attempts to circumvent the effect of Rule 3002(c) by contending that Rule 3005, not Rule 3002, governs the filing of the Claim[7] because he did not file the proof of claim on his own behalf; rather, he filed the claim on behalf of JC Squared under Rule 3005 as its putative subrogee.[8]  This argument is unavailing.

---

[7] Claimant did not file the claim in the name of JC Squared as contemplated and permitted by Rule 3005, and nothing in the claim indicates that it was intended to be filed on behalf of JC Squared.

[8] The Trustee argues that Claimant, as a co-obligor on the Note, is not entitled to subrogation in any event.  See In re Spirakis, Case No. 13-07462-8-SWH, AP No. 14-00095-8-SWH, 2017 WL 4898172 (Bankr. E.D.N.C. Oct. 30, 2017) (finding that one of the elements required for subrogation is that "the debt must have been one for which the subrogee was not primarily liable").  In this case,

Section 501(b) permits any entity to file a proof of claim <u>on behalf of a creditor</u> to whom both the debtor in bankruptcy and that entity are indebted.  <u>See</u> <u>Aetna Cas. & Sur. Co. v. Georgia Tubing Corp.</u>, 1995 WL 429018, at *1, n. 1 (S.D.N.Y.), <u>aff'd</u>, 93 F.3d 56 (2d Cir. 1996) ("Section 501(b) permits a codebtor to execute and file a proof of claim in the name of the assured creditor if the 'creditor does not timely file a proof of such creditor's claim.'"); <u>In re Fox</u>, 64 B.R. 148, 150 (Bankr. N.D. Ohio 1986) (explaining that to prevent double proof of a single claim, "[t]he claim filed by the co-debtor must be in the name of the creditor unless the name of the creditor is unknown").  Under § 501(b), "[i]f a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of <u>such claim</u>."  11 U.S.C. § 501(b) (emphasis added).[9]

Unlike Rule 3002, Rule 9006(b)(3) does not limit the Court's ability to extend the time within which a claimant may file a claim under Rule 3005 based on excusable neglect.[10]  Because nothing in

---

Claimant co-signed the Note, but the contents of Note indicate that he is signing in the capacity of a guarantor.  Because Claimant's claim will be denied for the reasons set forth herein, the Court does not need to determine whether Claimant signed the Note as a guarantor or as a primary obligor.

[9] Claimant asserted the Claim under the Settlement Agreement, rather than asserting JC Squared's claim under the Note.  JC Squared never held any claim against Debtor under the Settlement Agreement, and in fact released all claims against Debtor in that agreement.  <u>See</u> Claim 36, pt. 2, p. 4.

[10] Rule 3005(a) states:

Rule 9006 purports to limit the Court's authority to extend the time under Rule 3005 for excusable neglect, Claimant requests that the Court extend the time under Rule 3005 for over two and a half years until the date he filed a claim, and deem the Claim timely filed.  See 9 Collier on Bankruptcy ("Collier") ¶ 3005.04 (16th ed. 2019) ("Extensions of time for filing a claim pursuant to Rule 3005 will be governed by Rule 9006.").

If the name of the creditor is known, Rule 3005 requires an entity who may be entitled to indemnity or subrogation to file a claim in the creditor's name.  See In re Denby Stores, Inc., 86 B.R. 768, 774 (Bankr. S.D.N.Y. 1988).  As such, if Claimant were filing the Claim under Rule 3005(a) on behalf of JC Squared, he should have filed any claim in the name of JC Squared, rather than

---

If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), any entity that is or may be liable with the debtor to that creditor, or who has secured that creditor, may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or Rule 3003(c) whichever is applicable.  No distribution shall be made on the claim except on satisfactory proof that the original debt will be diminished by the amount of distribution.

Rule 3005(a).  Rule 3005(b) states:

An entity which has filed a claim pursuant to the first sentence of subdivision (a) of this rule may file an acceptance or rejection of a plan in the name of the creditor, if known, or if unknown, in the entity's own name but if the creditor files a proof of claim within the time permitted by Rule 3003(c) or files a notice prior to confirmation of a plan of the creditor's intention to act in the creditor's own behalf, the creditor shall be substituted for the obligor with respect to that claim.

Rule 3005(b) (emphasis added).

his own.  The primary purpose of this rule is to avoid two proof of claims, with the potential consequence "that double dividends might be paid upon what was in fact only a single debt."  <u>Hartman v. Utley</u>, 335 F.2d 558, 560 (9th Cir. 1964).

When a co-obligor pays a debt post-petition, the co-obligor must elect whether to assert a claim in his own name under § 502(e), or in the name of the creditor under § 509.  As explained by <u>Collier</u>:

> In order for a co-obligor to exercise subrogation rights under section 509, the co-obligor must pay the claim of a "creditor" (i.e., an entity that has a right to payment from the debtor as of the petition date). In other words, the payment giving rise to the subrogation rights must be made postpetition. If a payment is made prior to bankruptcy, there is no creditor of the debtor remaining to whom the co-obligor may be subrogated for purposes of section 509, because a prepetition payment by the co-obligor extinguishes any right to payment that the original obligee would have been able to assert against the debtor on the petition date. Thus, in those instances where a co-obligor has paid the claim of another against the debtor prepetition, the co-obligor must rely on its right to reimbursement or contribution under section 502(e)(2).
>
> * * *
>
> If the co-obligor has paid the original creditor postpetition, the co-obligor has a choice of whether to proceed as a claimant in its own right under section 502(e)(2) or to seek a right of subrogation to the claim of another creditor under section 509. But the co-obligor may only choose one provision under which to recover. Both section 502 and section 509 make clear that assertion of rights under one section precludes allowance of an essentially duplicate claim under the other.

> The decision to assert a claim under either section 509 or section 502(e)(2) is not a choice without consequence.

Collier ¶ 509.02[4]-[5] (footnotes omitted).

Here, Claimant filed the Claim in his own name, and while asserting a right to recover arising out of the Settlement Agreement, did not state that it was filed by Claimant as a subrogee of JC Squared.  Moreover, at the time he filed the claim, JC Squared had no claim to assert, having released its claim against Debtor and the estate under the Settlement Agreement, and Claimant held the only claim.  Cf. Collier ¶ 3005.05 ("[T]he codebtor [filing under Rule 3005] is not a creditor with a claim").

In Denby, the potential subrogee filed timely contingent claims in its own name in anticipation that it might be called on to pay the obligations.  86 B.R. at 772.  The claimant specifically identified the basis of its claims as "in the nature of indemnity or subrogation."  Id.  After paying the underlying debt to the creditor and fixing the obligation, the creditor amended the claims to "clarify the section of the Code pursuant to which it [sought] relief," asserting the debt specifically as a subrogee under § 509. Id.  The court determined that it was merely a technical error for a subrogee to file the claim in his own name which will not result in disallowance when the "plain language" of the claim makes clear that the claim is being asserted as a subrogee and the error causes no surprise or prejudice.  Id. at 774.  In this case, there is no

13

indication in the Claim that Claimant is asserting a right to subrogation under § 509, rather than a right to indemnity or contribution under § 502(e). This indicates an election by Claimant to proceed in his own name under § 502(e), rather than as a subrogee of JC Squared under § 509. As recognized by <u>Collier</u>, Claimant's election to file a claim in his own right under § 502(e) has consequences. The consequence is that his claim is governed by Rule 3002, rather than Rule 3005.

Nevertheless, even if Claimant had filed a claim for subrogation under § 509 and Rule 3005, the delay in filing the claim for over two years in this case was not the result of excusable neglect.

3. **The failure to timely file the Claim was not the result of excusable neglect.**

Even if Rule 3005 applied, Claimant failed to carry his burden of proof to demonstrate excusable neglect. Claimant filed the Claim on July 26, 2019, over two years after the deadline to file claims. Claimant now argues that excusable neglect exists because his claim did not arise until after the bar date when he settled the Civil Suit and made the first payment.

Trustee asserts that the Court should disallow the claim because it was untimely filed. ECF No. 159. The standard for determining what constitutes excusable neglect was set forth by the Supreme Court in <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs.</u>

14

Ltd. 507 U.S. 380 (1993). In Pioneer, the Supreme Court adopted a two-part test for analyzing whether to extend the time to file an untimely proof of claim because of excusable neglect. First, the court must determine whether the claimant's failure to act constitutes neglect or is the result of neglect. In re Brown, 223 B.R. 82, 84 (Bankr. M.D.N.C. 1997) (applying the two-prong test from Pioneer). The Court defined neglect as "late filings caused inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control." In re Renegade Holdings, Inc., 2011 WL 3664425, at *2 (Bankr. M.D.N.C. Aug. 19, 2011) (citing Pioneer, 507 U.S. at 388). If the court determines that the failure to act was the result of neglect, the court then must determine whether that neglect was excusable. Id. To determine whether the neglect is excusable, the court must examine the following factors: "(1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." In re Malone, 2011 WL 4542692, at *2 (Bankr. D.S.C. Sept. 28, 2011) (citing Pioneer, 507 U.S. at 395). Courts properly focus on the reason for the delay, because the first two factors almost always favor the non-movant and the fourth issue is seldom at issue. In re Spiegel, Inc., 385 B.R. 35, 40 (S.D.N.Y. 2008) (citing Pioneer, 507 U.S. at

395).  The party seeking an extension bears the burden of proof to establish excusable neglect by preponderance of the evidence. Renegade Holdings, 2011 WL 3664425, at *2 (citing In the Matter of Bulic, 997 F.2d 299, 302 (7th Cir. 1993); In re Houbigant, Inc., 188 B.R. 347, 354 (Bankr. S.D.N.Y. 1995); In re Dartmoor Homes, Inc., 175 B.R. 659, 665 (Bankr. N.D. Ill. 1994); In re Specialty Equipment Companies, Inc., 159 B.R. 236, 239 (Bankr. N.D. Ill. 1993)).

Claimant has not established that his failure to timely file was the result of neglect.  At the hearing, Claimant stated that he did not file a claim in the case because he believed he was an unsecured creditor and did not need to file a claim.  This statement reflects a conscious, although erroneous, decision not to file, rather than neglect.  See In re Bayer, 527 B.R. 202, 211 (Bankr. E.D. Pa. 2015) (finding that, whether a decision is "reasonable or unreasonable, correct or incorrect, competent or negligent . . . is beside the point . . . . [b]ecause he made a conscious choice not to file . . . , there can be no excusable neglect"); Renegade Holdings, 2011 WL 3664425, at *3 ("Because not filing a claim was a conscious and deliberate decision by [the creditor], the court concludes that [the creditor's] failure to file a claim does not constitute neglect under Rule 9006(b)(1)."); In re Steve A. Clapper & Assocs. of Florida, 346 B.R. 882, 886 (Bankr. M.D. Fla. 2006) (holding that a misunderstanding of the

16

rules does not constitute excusable neglect). Therefore, Claimant's decision does not constitute neglect.

Even if the failure to file were the result of neglect, Claimant's failure to file a timely claim was not excusable. Although Claimant argues that he was not served with JC Squared's Complaint until immediately after the bar date and he does not remember receiving the Claims Notice, he does not give any reason for the more than two year delay after being served, and concedes that he was aware of the bankruptcy filing from its inception. The record confirms that Claimant received proper notice of the bankruptcy prior to the deadline passing. Moreover, the address to which the Claims Notice was sent is the correct mailing address for Claimant. It is well-settled that a notice that is properly addressed, stamped, and deposited in United States mail is presumed to have been received, absent strong evidence to the contrary. See Hagner v. U.S., 285 U.S. 427, 43 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); Bosiger v. U.S. Airways, 510 F.3d 442, 452 (4th Cir. 2007)(finding that the creditor's general denial of receiving notice of the bankruptcy was insufficient to overcome the presumption that creditor received adequate notice); In re Denny, Case No. 01-81440, ECF No. 79 (M.D.N.C. Jan. 2, 2002)

(finding that "[t]he evidence offered on behalf of [claimant], consisting of an affidavit stating that to the best of the recollection of the affiant, the notice was never received, is insufficient to rebut the presumption that the notice was received by [claimant].") (citing In re Ms. Interpret, 222 B.R. 409, 414 (Bankr. S.D.N.Y. 1998)).

Here, the burden is on Claimant to rebut the presumption that he received notice and therefore had knowledge of the March 29, 2017 deadline. The primary evidence Claimant offers to rebut this presumption is that he does not recall receiving the Notice. This general denial is insufficient to refute the presumption that the Claimant received the Notice. Collier ¶ 3002.03[1] ("Once notice of the date is mailed to the creditor in accordance with the rule, the creditor is presumed to have received the notice. Mere testimony of nonreceipt is insufficient to overcome that presumption." (footnotes omitted)).[11] Therefore, Claimant had proper notice of the deadline to file a proof of claim.

---

[11] To the extent that the Claim had been filed on behalf of JC Squared under § 509 and Rule 3005, rather than in his own right as a direct creditor, it necessarily therefore also was filed under § 501(b), rather than § 501(a). Section 502(b)(9) permits the allowance of a claim as tardily filed only to the extent provided by § 726(a)(1), (2), or (3), and none of those subparagraphs provides for allowance of a tardily filed, non-priority claim under § 501(b). Section 726(a)(3) permits subordinated distribution to a tardily filed claim only where the claim is filed under § 501(a). Having determined that the claim was filed under § 502(e) and Rule 3002, the claim is allowed as a tardily filed unsecured claim entitled to subordinated distribution under § 726(a)(3). Section 726(a)(2)(C) permits a tardily filed unsecured claim under § 502(a) to share equally with timely filed unsecured claims if the creditor did not have notice or actual knowledge of the case in time to file a timely claim. Claimant concedes he had actual knowledge of the case at its inception.

Claimant was aware of JC Squared's claim against Debtor and his potential liability under the guaranty when he executed the Note, and was aware that JC Squared sued him shortly before the claims deadline, if not shortly thereafter. Claimant similarly had knowledge of the Civil Suit in March of 2017, either immediately prior to or after the bar date on March 27, 2017. The Complaint was filed on March 10, 2017, and Claimant filed the Answer to the Civil Suit Complaint on April 21, 2017. Once Claimant had knowledge of the Civil Suit, he knew that JC Squared was seeking to enforce his obligations under the Note, even though exact liability had not been determined and payment had not been made.[12] Even after settling the lawsuit in December 2018, almost two years to the day after the Clerk issued the Claims Notice, Claimant still failed to file a claim until July 2019. Therefore, Claimant waited well over two years past the deadline and over seven months after executing the Settlement Agreement, despite his knowledge of the bankruptcy case. Claimant offered no explanation for this delay, but merely stated that he decided to file the claim when he learned that the bankruptcy case had not been closed. These circumstances demonstrate an unjustifiable lack of diligence.

---

[12] The Bankruptcy Code broadly defines a claim as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (emphasis added).

Claimant's significant and controllable lack of diligence is compounded by the filing of a putative claim at a time when the Trustee already has prepared the estate for final report and administration, and the estate will be prejudiced by the allowance of the claim.  For these reasons, Claimant has not met his burden of establishing excusable neglect.  The Claimant did not establish that his failure to file resulted from neglect, or that any neglect was excusable.  The length of delay and the impact on judicial proceedings and the estate if the Court were to allow the Claim pari passu with other more diligent creditors, outweigh a finding that any neglect was excusable, especially under circumstances where the estate was otherwise prepared for a final report and account and distribution to diligent creditors.

## Conclusion

Based on the foregoing, the Court finds that the Claim was untimely filed under Rule 3002(c).  Alternatively, to the extent, if any, Claimant filed the Claim on behalf of JC Squared under Rule 3005, he failed to establish that his filing over two years after the deadline was caused by excusable neglect.

NOW, THEREFORE, the Objection is sustained, and Claim No. 36 is disallowed except to the extent provided under 11 U.S.C. § 726(a)(3).

[End of Document]

20

## Parties to be Served

Everett B. Saslow, Jr., Trustee
Hill Evans Jordan & Beatty
Post Office Box 989
Greensboro, NC 27402

Scott Curtis
951 Ben Black Road
Midland, NC 28107

Jeffrey Oleynik
Attorney for Scott Curtis
Brooks Pierce
230 N. Elm Street
Suite 2000 Renaissance Plaza
Greensboro, NC 27401